# TABLE OF CONTENTS

I.    BACKGROUND ................................................................................. 1

II.   PROCEDURAL HISTORY ............................................................. 1

III.  ISSUES PRESENTED ...................................................................... 2

IV.  ARGUMENTS AND AUTHORITIES ........................................... 3

    A.   Settlements from a Lawsuit are Subject to the Origin of the Claim Doctrine **3**

        i.   Assignment Does Not Change the Character of the Proceeds **............ 4**

        ii.  A Qui Tam Relator Receives an Assignment of Lawsuit Settlement Proceeds **................................................................................................ 5**

    B.   A Qui Tam Recovery is Not Subject to Tax **................................................ 6**

    C.   Prior Circuit Decisions Rest on Misconstruction of Justice Scalia's Words **... 7**

    D.   Taxing the Qui Tam Settlement Recovery Results in a Contradiction to the FCA **............................................................................................................ 10**

    E.   If the Qui Tam Recovery is Taxable, it Should Be as Capital Gain Rather Than Ordinary Income **................................................................................ 10**

V.    CONCLUSION ............................................................................... 12

VI.  REQUEST FOR HEARING .......................................................... 13

## TABLE OF AUTHORITIES

**CASES**

*Alderson v. United States*, 686 F. 3d 791 (9th Cir. 2012) ..................................8,9, 11, 12

*Alexander v. Commissioner*, 72 F.3d 938, 942 (1st Cir. 1995) **..............................**4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) **...................................**3

*Brooks v. United States*, 383 F. 3d 521 (6th Cir. 2004) **.........................................**8

*Campbell v. Commissioner*, 658 F. 3rd 1255 (11th Cir. 2011) **..............................**8

*Campbell-Ewald v. Gomez*, 577 U.S. ___, 136 S.Ct. 663 (2016) **.........................**8

*Craig Cunningham v. General Dynamics Information Technology, Inc.*, No. 17-1592 (4th Cir. 2018) **......................................................................................**10

*Estate of Meade v. Comm'r*, 489 F.2d 161, 163 (5th Cir. 1974) **..........................**11

*Keller Street Dev. Co. v. Comm'r*, T.C. Memo 1978-350, *aff'd* 688 F.2d 675 (9th Cir. 1982) **...............................................................................................**3

*Nahey v. Commissioner*, 196 F. 3d 866 (7th Cir. 1999) **.....................**4, 5, 7, 9, 11

*Patrick v. Commissioner*, 799 F.3d 885 (7th Cir. 2015) **.......................**8, 9, 11, 12

*Roco v. Commissioner*, 121 T.C. 10 (2003) **.........................................................**7

*Salge v. Edna Independent School Dist.*, 411 F.3d 178, 184 (5th Cir. 2005) **..........**3

*U.S. v. Gilmore*, 372 U.S. 39, 47 (1963) **.........................................................**3, 6

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 768 (2000) **...............................................................................**6, 7, 8, 9, 10, 12

*Woodward v. Commissioner*, 397 U.S. 572 (1970) **...........................................**3, 6

*Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940) **.....................................**10

## STATUTES

26 U.S.C. § 104(a)(2) .................................................................................... 8

26 U.S.C. § 115 ..................................................................................... 6, 10

26 U.S.C. § 1221 ................................................................................... 11, 12

31 U.S.C. § 3729 ..................................................................................... 1, 5

31 U.S.C. § 3730 ........................................................................... 1, 5, 6, 10, 12

## MISCELLANEOUS

Brief of Respondent-Appellee at 7, Nahey v. Comm'r of Internal Revenue, No. 99-1731, (7th Cir. October 2, 2000) .................................................................... 5

Fed. R. Civ. P. 56(c), .................................................................................... 3

H. R. Conf. Rep. No.104-737, at 301 (1996), *as reprinted in* 1996 U.S.C.C.A.N. 1474, 1589 ........................................................................................... 4, 7

Press Release of the Treasury Inspector General for Tax Administration, TIGTA-TIGTA-2012-49, September 27, 2012 ............................................................... 6

I. **BACKGROUND**

On April 4, 2012, Sharon Barnes, whose legal name at the time was Sharon Shadic, filed a qui tam action in the United States District Court for the Southern District of New York, captioned United States of America ex rel. Sharon Shadic v. UFC Aerospace, United Fastener Co., Inc. and Douglas B. Davis, on behalf of the United States of America, pursuant to the qui tam provisions of the False Claims Act (the "FCA"), 31 U.S.C. section 3730(b).

The underlying cause of action in the above-referenced lawsuit was a claim by the United States to recover damages and penalties from defendants under section 3729, et seq. of the False Claims Act, arising from Defendants' misrepresentation of defendant UFC as a woman-owned small business ("WOSB") in order to obtain government contracts. As a result of the fraud, Defendants obtained millions of dollars of work on federal contracts to which they were not entitled.

The United States intervened in the qui tam action filed by Sharon Barnes on or about October 5, 2015, more than three years after the original complaint was filed, filing an amended Complaint-in-Intervention of the United States of America. Shortly thereafter, on or about October 8, 2015, a Stipulation and Order of Settlement and Release was entered into by the United States, Sharon Barnes, and Defendants, which called for a settlement payment of $20,015,956.92 from the Defendants, of which amount Sharon Barnes received $3,602,872.25.

II. **PROCEDURAL HISTORY**

As presented in the Joint Stipulation of Facts filed and agreed to in this case, Plaintiffs Sharon and Duncan Barnes timely filed a federal income tax return for the 2015 tax year in which they included the $3,602,872.25 qui tam recovery received by Sharon as ordinary income. Plaintiffs timely filed an Amended U.S. Individual Income Tax Return ("Form 1040X") for 2015, claiming a refund of federal income tax of $875,005.00 plus statutory interest, on the basis that the settlement proceeds from a qui tam action are not taxable income. The Commissioner of Internal Revenue disallowed all but $67,912.00 of the amount claimed as a refund. Plaintiffs Sharon and Duncan Barnes subsequently timely filed this suit for refund. (A1, Letter 905).

**III.     ISSUES PRESENTED**

1. Whether the relator's portion of a qui tam settlement recovery is subject to federal income tax.

2. If the answer to the first issue is yes, whether the settlement recovery should be subject to ordinary income or capital gains tax rates.

IV.     ARGUMENTS AND AUTHORITIES

Summary judgment is appropriate if it can be shown that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Salge v. Edna Independent School Dist.*, 411 F.3d 178, 184 (5th Cir. 2005); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In this case, there exist no genuine issues of material fact. The question is only whether the amount received by plaintiff under the qui tam settlement agreement is subject to tax, and, if it is, whether it is subject to ordinary income tax rates or capital gains rates.

This is a case of first impression in the Fifth Circuit. Proper application of the "origin of the claim" doctrine, which has been the controlling test for more than half a century, would show that a qui tam settlement recovery is not subject to tax. However, should the Court determine the proceeds are taxable, it should be as capital gains, rather than ordinary income.

A. <u>Settlements from a Lawsuit are Subject to the Origin of the Claim Doctrine.</u>

The taxability of an amount received as a recovery in a lawsuit, whether by settlement or judgment, is determined under the origin of the claim doctrine. This has been the controlling test on the taxability of a lawsuit recovery for more than half a century. *U.S. v. Gilmore*, 372 U.S. 39, 47 (1963); *Woodward v. Commissioner*, 397 U.S. 572 (1970). Under this doctrine, taxability is determined by the origin and nature of the claim to which the recovery relates. *Gilmore*, 372 U.S. at 47. The recovery received must be considered as having the same nature as the right upon which the lawsuit was based. For example, a business suing for lost profits will have to treat its recovery in a resulting lawsuit as ordinary income. On the other hand, a recovery arising out of a claim for damages to a capital asset will have to be treated as a nontaxable return of capital, or perhaps a capital gain. *Woodward*, 397 U.S. at 577-578.

The Government has consistently used the origin of the claim doctrine in determining the taxability of proceeds from lawsuits. For example, the Tax Court has upheld the IRS's determination that a judgment for lost profits was categorized as ordinary income under the origin of the claim doctrine. *Keller Street Dev. Co. v. Comm'r*, T.C. Memo 1978-350, *aff'd* 688 F.2d 675

(9th Cir. 1982). Additionally, the House Committee Report to the Small Business Job Protection Act of 1996 states, "If an action has its origin in a physical injury or physical sickness, then all damages (other than punitive) that flow therefrom are treated as payments received on account of physical injury or physical sickness whether or not the recipient of the damages is the injured party." H. R. Conf. Rep. No.104-737, at 301 (1996), *as reprinted in* 1996 U.S.C.C.A.N. 1474, 1589.

    i.    <u>Assignment Does Not Change the Character of the Proceeds</u>.

As the House Committee Report notes, the classification of the claim for tax purposes remains unaltered even if there is an intervening change in its ownership. If a claim is acquired by means of a purchase, merger, or assignment, the recovery retains the same tax characterization in the hands of the party that ultimately receives the recovery as it would have had in the hands of the original claimant. *Nahey v. Commissioner*, 196 F.3d 866 (7th Cir. 1999).

In *Nahey*, the taxpayer (Nahey) settled a legal claim which it had acquired six years earlier from Wehr Corporation, an industrial manufacturer, as part of a corporate acquisition. The claim originated from an alleged breach of contract by Xerox Corporation, and sought lost profits. Nahey sought to treat the $6 million settlement amount as a capital gain. Nahey conceded that if Wehr hadn't been sold, and if it had settled its suit against Xerox on the same terms as Nahey, the entire settlement would have been taxed to Wehr as ordinary income rather than as a capital gain because the amount received in the settlement would have replaced ordinary income of which Xerox had deprived Wehr.

That concession was compelled, said the Court, by the principle that the tax classification of amounts received in settlement of litigation is to be determined by the nature and basis of the action settled, and amounts received in compromise of a claim must be considered as having the same nature as the right compromised. *Id*. at 868 (citing *Alexander v. Commissioner*, 72 F.3d 938, 942 (1st Cir. 1995)). Chief Judge Posner, writing for the 7th Circuit, then went on to say that "…we cannot find any practical reason for why the tax treatment of the proceeds of a suit should change merely because of an intervening change in ownership." *Nahey*, 196 F.3d at 868. It accordingly affirmed the Tax Court's decision below, "…which merely requires that the tax

4

classification of a legal claim remain unaltered through transfer of the claim whether by assignment or as an incident to a corporate acquisition or other reorganization." *Id.* at 870.

The Government, which was the prevailing party in *Nahey*, filed a brief in opposition to Nahey's Petition for Certiorari to the United States Supreme Court, stating that the decision of the 7th Circuit was correct and not in conflict with any decision by the Supreme Court or any other court of appeals. *See* Brief of Respondent-Appellee at 7, Nahey v. Comm'r of Internal Revenue, No. 99-1731, (7th Cir. October 2, 2000).

    ii.    <u>A Qui Tam Relator Receives an Assignment of Lawsuit Settlement Proceeds</u>.

The proceeds received by Plaintiff Sharon Barnes had their origin under the False Claims Act (FCA). The FCA, originally enacted in 1863, imposes a civil liability upon any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government…a false or fraudulent claim for payment or approval." 31 U.S.C. Sec. 3729(a). The defendant is liable for up to treble damages and a civil penalty of up to $10,000 per claim.

The Government itself may commence an FCA action against the alleged false claimant, under sec. 3730(a). But what makes the FCA unique is that it creates a form of civil action known as qui tam, in which a private person (the "relator") may bring a civil action "for the person and for the United States Government" against the alleged false claimant, "in the name of the Government." Sec. 3730(b)(1).

If a relator initiates the FCA action, he or she must deliver a copy of the complaint, and any supporting evidence, to the Government, which then has 60 days to intervene in the action. Sec. 3730(b)(2), (4). If the Government declines to intervene within the 60 day period, the relator has the exclusive right to conduct the action, and the Government may subsequently intervene only upon a showing of "good cause." Sec. 3730(b)(3). If the Government intervenes, it assumes primary responsibility for the action, though the relator retains the right to continue to participate in the litigation and is entitled to a hearing before voluntary dismissal and to a court determination of reasonableness before settlement. Sec. 3730(c)(2).

The relator is entitled to a share of the proceeds from any FCA action, ranging from 15 to 25 percent if the Government intervenes, and 25 to 30 percent if it does not, plus attorney's fees and costs. Sec. 3730(d)(1)-(2).

Contrary to erroneous language in several of the qui tam tax cases, discussed below, the relator's share of the recovery is not simply a fee that he or she receives for filing and/or prosecuting a successful action on behalf the Government. The filing of a qui tam action by a private person under section 3730(b)(1) of the FCA effects a "partial assignment" of the Government's damages claim to the qui tam relator, and gives the relator an "interest in the lawsuit", and not merely the right to retain a fee out of the recovery. *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 768 (2000).

B. <u>A Qui Tam Recovery is Not Subject to Tax</u>.

A qui tam recovery is not your "garden variety" informants fee. It is different in a very fundamental way. The qui tam provisions of the FCA authorize a private citizen, known as the "relator", to file and prosecute a federal lawsuit on behalf of the Government for violation of the Act. That filing itself effects a partial assignment of the Government's claim against the qui tam defendant to the relator, and thereby confers Article III standing upon the relator for his or her qui tam action. See *id*.

The extent of the relator's interest in the Government's claim, as noted above, can range from 15% to 30%, and the value of that interest can range from zero on up to tens of millions. But one thing is clear: any recovery received by a qui tam relator is the result of a settlement or judgement of a qui tam lawsuit, and the tax laws mandate that the taxability of an amount received as a recovery in a lawsuit, whether by settlement or judgment, is determined under the "origin of the claim" doctrine. *See Gilmore*, 372 U.S. at 47; *see also Woodward*, 397 U.S. at 577.

By all rights, the taxability of a relator's qui tam recovery should be a simple and straight-forward exercise. By filing an action under section 3730 of the FCA, the relator effects a partial assignment of the Government's claim for damages and penalties under section 3729(a) of the FCA. The federal Government does not pay income tax. *See, e.g.,* the Press Release of the Treasury Inspector General for Tax Administration, TIGTA-TIGTA-2012-49, September 27, 2012. Nor for that matter do state and local governments, and instrumentalities thereof.  *See* 26 U.S.C. § 115.

The partial assignment of the Government's claim to the relator does not alter the non-taxable character of the original claim. Any recovery retains its nontaxable character, whether or not the recipient of the damages is the injured party. See *e.g., Nahey*, 196 F.3d at 868; H. R. Conf. Rep. No.104-737, at 301 (1996)*, as reprinted in* 1996 U.S.C.C.A.N. 1474, 1589.  The 18% of the recovery received by plaintiff is no more subject to income tax than the 82% of the recovery which the Government received. The recovery as a whole is nontaxable.

C.  Prior Circuit Decisions Rest on Misconstruction of Justice Scalia's Words.

Unfortunately, there is a series of demonstrably erroneous decisions on the taxation of qui tam recoveries which muddy the legal waters. Indeed, they ignore the very fact that qui tam recoveries are received in settlement of a lawsuit, not simply as compensation for services. It is truly remarkable that not a single one of these decisions gives the "origin of the claim" doctrine so much as a mention. Equally disturbing is their misconstruction of Justice Scalia's opinion in the *Vermont Agency* case — the Supreme Court's seminal decision on qui tam actions under the False Claims Act—and their failure to recognize that the FCA grants exclusive rights to a qui tam relator.

*Vermont Agency* dealt with whether a private citizen had Article III standing to file suit on behalf of the Government in a qui tam action, and whether a State (or state agency) could be sued for violation of the False Claims Act. While the case did not deal directly with the taxability of a qui tam recovery, Justice Scalia's opinion on the standing issue is directly on point. In holding that a qui tam relator had standing to file an action under the FCA, Justice Scalia held that a relator in a qui tam case has "…an interest in the lawsuit, and not merely the right to retain a fee out of the recovery." This interest was acquired because "(t)he FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim."

There have been a total of five cases addressing the taxability of qui tam recoveries. The first of these cases, *Roco v. Commissioner*, 121 T.C. 10 (2003), involved a pro se petitioner who simply argued that because his qui tam recovery was not derived from capital or labor, it was not includable in income. His argument was summarily rejected in a brief two paragraph opinion which simply concluded that the Internal Revenue Code provided no exclusion for proceeds received by a relator in a qui tam proceeding. The next case to address the taxability of a qui tam

7

recovery was *Brooks v. United States*, 383 F. 3d 521 (6th Cir. 2004). There the taxpayer inexplicably argued that his qui tam award, or at least part of it, was attributable to personal injury or sickness, and therefore exempt from tax under section 104(a)(2) of the Internal Revenue Code, which exempts damages received on account of personal injuries or sickness. The Court rejected the taxpayers argument, holding that the FCA claim was based upon contract fraud inflicted upon the Government, not on a tort inflicted upon the relator. The next case to deal with the issue was *Campbell v. Commissioner*, 658 F. 3rd 1255 (11th Cir. 2011). In a brief opinion containing little legal analysis or support other than reliance upon the 6th Circuit's decision in *Brooks*, the 11th Circuit held that the relator's award was "in the nature of a reward, and is includable in gross income." Not one of these opinions seemed to recognize or acknowledge that the qui tam recovery in each of these cases was the result of the settlement of a lawsuit, and that the taxability of the recovery should have been determined under the "origin of the claim" doctrine. The doctrine has been established tax law for half a century. It applies to qui tam recoveries.

The final two cases in this series of qui tam tax decisions, *Alderson v. United States*, 686 F. 3d 791 (9th Cir. 2012) and *Patrick v. Commissioner*, 799 F.3d 885 (7th Cir. 2015), deal only with whether a qui tam recovery should be characterized as capital gain rather than ordinary income. The taxability of the recoveries was not in dispute, only their character. We address the *Alderson* and *Patrick* cases later in this brief (in connection with plaintiffs' alternative argument for capital gain treatment), but because of their potential relevance to this Court's decision on the broader question of taxability, we are compelled to discuss here the gross misconstruction these two courts made with respect to Justice Scalia's opinion in the *Vermont Agency* case. The Ninth Circuit in *Alderson* states as follows:

> The Supreme Court has characterized a relator's share under the FCA as a "bounty" and as a "fee." The Court observed in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, that "the relator's bounty is simply the fee he receives out of the United States' recovery for filing and/or prosecuting a successful action on behalf of the Government. The Court further referred to the relator's share as "the bounty [the relator] will receive if the suit is successful," id., and to the qui tam suit as "the relator's suit for his bounty."

8

*Alderson*, 686 F.3d at 795 (internal citations omitted).  The above quotations from *Vermont Agency* are taken out of context, and turn Justice Scalia's opinion completely on its head. What Justice Scalia actually said was this:

> It would perhaps suffice to say that the relator here is simply the statutorily designated agent of the United States, in whose name (as the statute provides, see 31 U.S.C. sec. 3730(b)) the suit is brought - and that the relator's bounty is simply the fee he receives out of the United States' recovery for filing and/or prosecuting a successful action on behalf of the Government. ***This analysis is precluded, however, by the fact that the statute gives the relator himself an interest in the lawsuit, and not merely the right to retain a fee out of the recovery.***

*Vt. Agency*, 529 U.S. at 772 (emphasis added). Justice Scalia then went on explain, as discussed earlier in this brief, that the FCA effects a partial assignment of the Government's damages claim under the Act, and that the relator, as partial assignee of the claim, has Article III standing to sue. *See id.*  The Supreme Court most certainly did not say that the relator's qui tam recovery was simply a fee for filing the action. Quite the contrary. The relator has an interest in the lawsuit, and not merely the right to a fee. That distinction makes a qui tam recovery quite different than an ordinary informant or whistleblower fee.

The 7th Circuit in *Patrick* extracts the same sentence out of its context in *Vermont Agency*, to characterize a relator's recovery as "…simply the fee he receives for filing and/or prosecuting a successful action on behalf of the Government." As noted above, that analysis is rejected in Justice Scalia's very next sentence.

In summation, we believe that the prior cases ruling upon the taxability of a qui tam recovery are legally incorrect. They fail to acknowledge that a qui tam recovery involves the settlement of a lawsuit, and its taxability must be determined under the "origin of the claim" doctrine. The origin of the claim is the Government's right to damages and penalties under the FCA for filing a fraudulent claim, the receipt of which is not taxable. The portion of the claim assigned to the relator retains the same tax free character it had in the hands of the original claimant, the Government. *See Nahey,* 196 F.3d at 868.

D. <u>Taxing the Qui Tam Settlement Recovery Results in a Contradiction to the FCA</u>.

Subjecting a qui tam recovery to tax is contradicted by the recovery limitations contained within the FCA itself. When the Government intervenes in a qui tam case, its share of the recovery cannot exceed 85%. If it does not intervene, its share is capped at 75%. Sec. 3730(d)(1)-(2). If the plaintiff's 18% share of the recovery in this case is subjected to federal income tax at ordinary income rates, the Government's share of the recovery will exceed the 85% cap. Congress could not have intended for the Government to do indirectly through taxation what it was prohibited from doing directly, i.e., keep for itself more than 85% of the recovery.

The relator in a qui tam action has the statutory authority to prosecute a federal FCA lawsuit on behalf of the Government. If the Government does not intervene, the relator is authorized to prosecute the lawsuit entirely on its own. The relator is more than a paid informant or designated agent for the Government. The FCA gives the relator an interest in the lawsuit, and not merely the right to retain a fee out of the recovery. *Vt. Agency*, 529 U.S. at 772. In every sense of the word, the relator acts an instrumentality of the Government, and instrumentalities of Government do not pay tax. See Section 115 of the Internal Revenue Code.

Providing an individual with the same treatment as the Government is not a novel idea. Under the long-standing doctrine of derivative sovereign immunity (also known as "Yearsley Immunity"), a private citizen or entity, carrying out an authorized governmental function, is cloaked with the same immunity from suit that the government would have had if performing the function itself. *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940); *see also, Campbell-Ewald v. Gomez*, 577 U.S. ___, 136 S.Ct. 663 (2016); *Craig Cunningham v. General Dynamics Information Technology, Inc.*, No. 17-1592 (4th Cir. 2018). Cloaking a qui tam relator with governmental immunity from taxation is entirely consistent with the fundamental basis underlying "Yearsley" immunity.

E. <u>If the Qui Tam Recovery is Taxable, it Should Be as Capital Gain Rather Than Ordinary Income</u>.

Should this Court determine that a qui tam relator's recovery is subject to tax, Plaintiffs' contend, alternatively, that the recovery should be taxed as a capital gain and not ordinary income. Plaintiff Sharon Barnes filed a qui tam lawsuit on April 4, 2012 in the United States District Court for the Southern District of New York. By filing that action, the FCA effected a partial assignment of the Government's FCA damages claim to her, and by so doing conferred upon her the standing to maintain the qui tam lawsuit. *Vt. Agency*, 529 U.S. at 772. The extent of her interest in the Government's claim was uncertain at the time of filing, but would range from a minimum of 15% to a maximum of 30% of the settlement recovery. The dollar value of the claim was equally uncertain, and could have ranged from zero to tens of millions of dollars. Nonetheless, she acquired her interest in the claim simultaneously with, and as a direct result of, her filing of the qui tam suit in April, 2012. It was that very interest - a partial assignment of the Government's damages claim, effected by the FCA - which provided her with standing to maintain the qui tam action. *Id*.

If the value of her claim were not so speculative at the time, perhaps plaintiff would have had ordinary income to report in 2012. But the value of her interest was at that time highly speculative, and there would have been no income to report. Her tax basis in the claim would have been zero, much like a "sweat equity" owner of stock in a new business.

Under section 1221 of the I.R.C., a capital asset is broadly defined as "property held by the taxpayer." There are exceptions to that broad definition contained in section 1221, but none of them embrace legal claims. An interest in a lawsuit can be a capital asset. *See, e.g. Estate of Meade v. Comm'r*, 489 F.2d 161, 163 (5th Cir. 1974); *Nahey*, 196 F.3d at 868. When the lawsuit was settled in 2015, some three years after the action was filed, Sharon Barnes released her interest in the Government's claim in exchange for a payment of $3,602,872.25. Plaintiffs contend that the settlement recovery is not subject to tax at all under the "origin of the claim" doctrine, but if it is determined to be taxable, it should be taxed at capital gains rates. Plaintiff acquired her interest in the Government's claim in 2012. That interest increased in value over the three year period between filing and settlement. That accretion of value is the essence of a capital gain.

The *Patrick* and *Alderson* decisions, discussed earlier, each held that a qui tam recovery was ordinary income and not capital gain. The decisions in these cases are glaringly incorrect in

two very demonstrable ways. First, as we previously noted, both cases cite language from Justice Scalia's opinion in *Vermont Agency* entirely out of context, and use that language to unjustifiably support the conclusion that a relator's recovery is simply a fee for services performed, taxable as ordinary income. Justice Scalia said something quite different - that the relator had "…an interest *in the lawsuit*, and not merely the right to retain a fee out of the recovery." *Vt. Agency*, 529 U.S. at 772 (emphasis supplied).

Second, both *Patrick* and *Alderson* hold that a relator's claim is not a "capital asset" because a "capital asset" under section 1221 is defined as "property held by a taxpayer." 26 U.S.C. 1221. *Patrick* goes on to say that "…courts agree that an item is property only if the owner has the right to exclude others from using it." *Patrick*, 799 F.3d at 888. Both courts found that anyone else could have used the same information that formed the basis of the qui tam actions to file their own qui tam suits, and thus qui tam claims were not "property" for capital gain purposes. *Patrick*, 799 F.3d at 888-889; *Alderson*, 686 F.3d at 786-787.

This finding is the cornerstone of these two circuit court opinions, and it is simply wrong. Section 3730(b)(5) of the False Claims Act states as follows:

> When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

The plain language of the statute is clear: the relator in a qui tam suit has an exclusive interest in the action. Thus, a relator's claim is "property" for section 1221 purposes. The *Alderson* and *Patrick* decisions were premised upon a serious misconstruction of Justice Scalia's opinion in *Vermont Agency*, and an inexplicable misinterpretation of section 3730(b)(5) of the FCA, as it pertains to the finding that a relator's claim is not "property" for capital gain purposes.

V.     **CONCLUSION**

The plaintiff's qui tam recovery was the result of the settlement of a lawsuit, and must be analyzed under the "origin of the claim" doctrine. Under that doctrine, the plaintiff's recovery has the same tax exempt character it had in the hands of the original claimant, the federal Government. Should the Court determine that the recovery is taxable, it should be taxed as a capital gain and not as ordinary income. Plaintiff acquired an interest in the Government's claim for damages under

the FCA when she filed her qui tam action in 2012. When that action was settled in 2015, she received a cash recovery in exchange for the release of her interest.

## VI.     REQUEST FOR HEARING

Plaintiffs respectfully request that a hearing be set for presentation of oral argument.

Dated:   June 29, 2018

Respectfully submitted,

*/s/  Carolyn Dove*

Carolyn Dove
State Bar No. 24063989
Jeffrey D. Lerner
State Bar No. 12223910
**THE DOVE FIRM PLLC**
255 N Center St, Suite 102
Arlington, Texas 76011
Phone:  817.462.0006
Fax:  817.462.0027
E-mail: carolyn.dove@thedovefirm.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 29, 2018, the foregoing document was electronically submitted with the clerk of the court for the United States District Court, Northern District of Texas, using the electronic case file system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Carolyn Dove*
Carolyn Dove